## GEORGE W. COOK v. MOLLIE REYNOLDS ET AL.

| 58 | 243 |
|----|-----|
| 70 | 798 |
| 58 | 243 |
| 72 | 655 |
| 58 | 243 |
| 73 | 286 |

1. LIMITATION OF ACTIONS. *Promissory note. Death of payee.*
   Where the payee of a promissory note dies before it is barred by the Statute of Limitations, the running of the statute is suspended, by sect. 2162 of the Code of 1871, until letters testamentary or of administration have been granted upon the estate of the decedent.

2. SAME. *Note and bond for title. Bar of action. Not payment.*
   Although the bar of a promissory note by the Statute of Limitations extinguishes the right of action thereon, it is not payment so as to entitle the maker thereof, as obligee in a bond for title to a tract of land, conditioned upon the payment of the note, to demand a conveyance of the land, when in fact the note has not been paid.

3. BOND. *To convey title. Condition precedent. Right of action.*
   Where a party has given a bond to convey the title to certain land, upon the payment of a promissory note made by the obligee in the bond, no right of action on the bond will accrue until the note has been paid.

4. SAME. *For title to land. Condition precedent. Specific performance. Chancery pleading and practice.*
   R. gave a bond to convey the title to a lot of land to C. upon the payment of a promissory note made by the latter. Three years after the making of this contract R. died, and his heirs brought an action of ejectment to recover from C. the possession of the land. Thereupon C. filed a bill in chancery against the heirs of R., who were minors, alleging the payment of his note and de-

manding to be invested with the title of the land. The proof showed that the note had not been paid, and the chancellor dismissed the bill. This court, considering that C. is entitled to pay the money due on his note, and then to have the title to the land vested in him, reverses the decree of dismissal and directs that an account be taken to ascertain the amount due on the note, and that on payment thereof the title to the land be vested in C. These directions, being authorized by the pleadings and evidence in the case, are deemed proper, though not asked for by the appellant, in order to do justice to all parties without the litigation and cost of another suit.

5. SAME. *Specific performance. ·Minors. Power of Chancery Court.*
Although, in the case above stated, C. cannot pay to the minor heirs of R., who have no guardian, the money due on his note, and receive from them a conveyance of the title to the land, yet the Chancery Court has the power to require the payment of the purchase-money due by the note, and to transfer the title of the land to C., and has also ample power, under the Code of 1880, to deal with the money to be thus paid for the minors.

APPEAL from the Chancery Court of Monroe County.

Hon. LAFAYETTE HAUGHTON, Chancellor.

The case is sufficiently stated in the opinion of the court.

*Reuben Davis,* for the appellant.

I regard the Statute of Limitations as furnishing a complete remedy for the complainant. Our statute declares that in matters of mortgage, trust, or vendor's lien, where the note — the evidence of debt — is barred, the lien is barred. Before the Code of 1857 the bar of the debt was not a bar of the lien, and our courts so held. Since the act of 1857 the decisions have been in accordance with the rule asserted.

The whole subject of extinguishing debts and liens by the bar of a statute is with the Legislature, and not with the Court of Chancery. The Court of Chancery has no power whatever to suspend or arrest an act of the Legislature created in the exercise of legitimate power, and cannot suspend or withhold from a complainant a vested right. That a chancery court should assert the doctrine that a mortgagee should not be allowed a decree of redemption when the lien on the property has been satisfied in a legal form, is not only at variance with all principles of law, but monstrously absurd. The right of satisfaction in such cases is unquestionably a·

vested one, and cannot be disturbed by the Legislature or suspended by the courts.   It is alike binding on both.

The function of a court is to enforce the law as provided by the Legislature.   Any court, then, arbitrarily assuming to arrest the consequences when the debt has been satisfied, and its incident, the lien, has been extinguished, in conformity to law, commits a flagrant violation of the statute, and a usurpation of power nowhere conferred and nowhere existing outside the precincts of a capricious conscience.   A court has no more power to repeal a law or suspend a vested right than it has to enact the one or grant the other.

When the Statute of Limitations satisfies the debt, a right to satisfaction is vested, and the Court of Chancery is powerless to withhold relief — even by the interposition of an elastic conscience.   The idea that a moral conception should create an equitable obligation of such magnitude as to compel this or any other court to modify or suspend a vested right, is a positive antagonism of all rules of jurisprudence.

I have been taught that equity follows the law, and the law controls conscience.   In this instance, however, for the first time in my experience, the assumption is set up that the law is subordinate to and controlled by conscience. The right to the benefits of the Statute of Limitations is one of law, and attaches the moment the debt is barred.   No capricious sentimentality can interpose to obstruct its binding efficacy.   Equity follows the law, and there can be no equity which is not dictated by the law.   In this light the equity of conscience is a mockery, — a mere sham, — and its assertion as a guiding principle in matters of vested right is a crime against law.

Sect. 2150 of the Code of 1871 declares that in all cases where the remedy at law to recover the debt shall be barred, the remedy in equity to enforce the vendor's lien shall be barred.   This statute must, then, be conclusive of the question under consideration.   How the force of such language can be evaded by any court is curious.   " No proceeding shall be

brought or had ;" that is to say, neither suit brought nor defence allowed. Against this plain, explicit mandate of the statute the chancellor opposes the maxim of conscience, " If you ask equity you must do equity." This maxim is not applicable to this class of rights. Had it the universality claimed in this instance, it would become the unbending, despotic standard of guidance that might stretch or contract every case finding its way into the Court of Chancery. It would constitute a sole and all-absorbing question in every case for the consideration of such court, viz., Has the complainant done equity? If not, according to the temper and convictions of the court's conscience, vested rights, legal duties, legislative enactments, — in a word, every legal principle, — might be made to yield to this fearful tyrant.

The chancellor's decree is not sustained by the case of *Barnett* v. *Nichols*, 56 Miss. 622.

In the case of *Davis* v. *Minden*, 1 How. 183, the court say : " The bar created by the Statute of Limitations, when it attaches, is as effectual as payment or any other defence, and when once vested, cannot be taken away by legislative action without the defendant's consent." See also *Goff* v. *Robbins*, 4 Geo. 153 ; *Mandeville* v. *Lane*, 6 Cushm. 312 ; *Iler* v. *Ruth's Heirs*, 4 How. 276 ; *Ingraham* v. *Regan*, 1 Cushm. 213 ; *Mitchell* v. *Woodson*, 8 Geo. 267 ; 2 Geo. 145 ; *Benson* v. *Stewart*, 1 Geo. 49 ; *Pollard* v. *Maison*, 41 Ill. 516 ; *Gibson* v. *Reese*, 50 Ill. 383 ; *McNair* v. *Stanton*, 57 Miss. 298.

The defence that the note was satisfied and discharged by the Statute of Limitations should have been held sufficient to warrant the decree prayed for in the bill. But if the note has in fact been paid, the right of the complainant to a decree in his favor cannot be questioned. And the direct testimony upon the question of payment is sufficient, I think, to establish it, without the aid of the most conclusive circumstantial evidence.

*Reuben Davis* also argued the case orally.

*Murphy, Sykes & Bristow*, for the appellees.

1. Cook contends that the note for $100 recited in the title-bond, if ever executed, if not paid, is barred by the Statute of Limitations, and therefore he is entitled to a decree for specific performance. We hardly think the court will sustain this position. The condition of the bond for title is payment, and not the bar of the note by the Statute of Limitations. "Barred" is not " paid ; " and while Reynolds' representatives might not be able to maintain an action on the note, yet Cook will not be allowed to keep the money on this ground, and yet demand specific performance of the contract to convey. *Barnett* v. *Nichols*, 56 Miss. 622 ; 3 Pars. on Con. 62, 63.

2. But we submit that the equitable remedy upon the bond of Reynolds appears upon the face of the bill to be barred by the Statute of Limitations. If the concurrent right of action at law on the bond is barred, the equitable remedy is likewise barred. Code 1871, sects. 2174, 2175.

Reynolds died in 1869, after the statute had been running more than two years : so his death will not stop it. *Abbott* v. *McElroy*, 10 Smed. & M. 100 ; *Stephenson's Heirs* v. *McReary*, 12 Smed. & M. 9 ; *Byrd* v. *Byrd*, 6 Cushm. 144. The right of action on the bond, according to the bill, accrued July 27, 1866. The statute commencing to run April 2, 1867 (one year after the war), the action on the bond was barred April 2, 1874.

A bond for title, like a bond for attachment, or other like purpose, is simply a contract to pay so much money, and the condition is only proof of facts that give the right to recover on the contract. *Darcey* v. *Spivey*, 57 Miss. 520. So, when the contract to pay, in a bond for title, is barred, the equitable remedy is barred. *Sledge* v. *Jacob*, *ante*, p. 194, decided at this term of this court.

The defence of the Statute of Limitations is always allowed as a shield, and never as a sword. While the appellees could not avail themselves of it in an action of ejectment by them

to recover the land, yet it is a good defence to the bill in this case.

3. In his amended bill, the complainant, abandoning all other claims, asks relief solely on the ground that he has paid the notes recited in the title-bond. The bill bears upon its face the marks of improbability, and, taken in connection with the proof, it is overwhelmingly disproved. It was contended in the court below that if the note was not paid, we ought to produce it and show that it is not paid. We answer that payment is an affirmative fact, and must be proven affirmatively. We are not required to prove a negative. Moreover, the defendants are minors, answering by their guardian *ad litem*. Their father and mother died when they were quite young. Under these circumstances the courts will protect their interests, and certainly will not require them to prove that the allegations of an unsworn bill of complaint are not true.

*E. H. Bristow*, of counsel for the appellees, argued the case orally.

Campbell, J., delivered the opinion of the court.

The case was tried and decided on the amended bill, and the propriety of the decree dismissing it is the question to be decided now. The case presented is, that on the 27th of January, 1866, Reynolds, who held the legal title of the lots in dispute, executed to appellant a bond conditioned to convey the title to him upon his payment of $100, due six months from that date, and evidenced by the promissory note of appellant given to Reynolds. Appellant was, at the date of the bond and note, in possession of the lots, and has remained in possession ever since. The averment of the bill is, that after taking the bond for title and giving his note, appellant concluded that he should not pay it, and by agreement between himself and Reynolds the matter was referred to arbitration, and the award was that appellant should pay $100 and receive a conveyance of the lots, and that he immediately

paid the money; but Reynolds failed to make a conveyance of the title, and died without doing it. He died in 1869, and no letters testamentary or of administration have been granted on his estate. His widow survived him, and she died; and the bill is against the three minor children of Reynolds, to divest the title of the lots cast upon them by descent.

The *gravamen* of the bill is payment by complainant of the $100, the payment of which was the condition on which he was to have title. All else in the bill is surplusage. If the stipulated purchase-money was paid, complainant is entitled to divest the title of the heirs of Reynolds; otherwise not. A careful consideration of all the circumstances in evidence has failed to satisfy us that the purchase-money was paid. But counsel insists that the note for the purchase-money is barred by the Statute of Limitations, and, therefore, is to be considered as paid. The note is not barred, the payee having died before the expiration of the time prescribed to bar it, and no letters testamentary or of administration having been issued. Code 1871, sect. 2162. But if the note was barred, that would not entitle the maker to a specific performance of the obligation to convey title on payment of the note. The bar of the Statute of Limitations is not payment. It is a defence against a demand for payment, — an extinguishment of the right of action, — but no lapse of time is an excuse for the non-performance of a condition precedent to the accrual of a right to call for performance by another of an act to be done on the performance of such condition. The distinction is too manifest for discussion, and we would have declined to remark upon the proposition of counsel but for the apprehension that without it our statement that the note of appellant is not barred might be misconstrued as containing an implication that if it were barred that would make any difference.

It is clear that complainant was not entitled to divest the title of the heirs of Reynolds upon the theory of the actual payment of the purchase-money or the efficacy as payment of the bar of the Statute of Limitations, and to this

extent the decree of the Chancery Court is correct; but, according to our view, the result attained does not effect justice between the parties, under the peculiar circumstances of the case, as may be done under the pleadings and evidence with advantage to all; and although this view was not presented at the bar, and, we suppose, was not presented to the chancellor, we will direct the entering of the decree which secures the rights of all, as might be done under further litigation, at more expense, but can as well be done in this suit without such cost. It is clear that the right of appellant to pay the purchase-money and call for the title stipulated for in the bond for title is not affected by lapse of time. No right to call for a conveyance of the title accrued until payment of the purchase-money, which was the condition on which the obligation to convey was to arise. That payment has not yet been made. The Statute of Limitations has not yet commenced to run on the bond. The facts shown in this case furnish a reasonable explanation of delay in seeking a specific performance of the contract for title. About three years after the contract was made, Reynolds died intestate, and no administration has been had of his estate. Appellant continued in the possession and enjoyment of the lots until disturbed by the action of ejectment brought by the minor children of Reynolds, which aroused him to an assertion of his right to a conveyance of the legal title.

Appellant is entitled to pay the purchase-money evidenced by his promissory note to Reynolds, due six months after the 27th of January, 1866, and to have the title vested in him. The heirs of Reynolds are minors, without guardians, and the appellant cannot pay to them the purchase-money and receive a conveyance by them of the title; but it is competent and proper for the Chancery Court to require the payment of the purchase-money for them and to divest the title of the lots, which, on such payment, should be divested, and vested in the appellant. The power of the Chancery Court to deal with the money to be paid for the minor defendants is ample under

the Code of 1880, and thus the rights and interests of all parties will be conserved.

We therefore direct the decree dismissing the amended bill to be reversed, and the cause to be remanded for an account to be taken of the amount due by the note of appellant for the purchase-money of the lots, and for a decree in accordance with this opinion, and all costs in this court and the court below to be taxed against the appellant.