JEFCOAT, et al. *v.* POWELL, et al.

No. 41037 February 16, 1959 108 So. 2d 868

292

*Forrest G. Cooper,* Indianola, for appellants.

*Whittington & Whittington,* Greenwood; *P. J. Townsend, Jr.,* Drew; *Fountain D. Dawson,* Greenville, for appellees.

HALL, J.

John William Powell, a resident of Sunflower County, Mississippi, executed a last will and testament on January 12, 1929 in which he directed that all his just debts

and funeral expenses be paid and devised his 200 acres of land as follows: To his seven children each a particularly described share of land amounting to twenty-five acres each for seven of them and twenty-five acres to his second wife who was the stepmother of the children. Her share was also particularly described in the will. He died on September 9, 1932 and his will was duly probated by decree of September 20, 1932.

Within the time provided by law the widow, Mrs. Sarah Powell, renounced the will and elected to take the share which the law allows her as a widow. In the course of the administration of the estate it was necessary to sell forty acres of the land which included the twenty-five acres devised to her and fifteen acres of the land devised to one of the children and the remaining 160 acres, which lay in the form of a square, was taken charge of by the widow as a homestead. She continued in possession of this 160 acres up until the trial of this suit, but the proof establishes that a few years before 1949 she rented or leased the land to Floyd D. Jefcoat and reserved unto herself one room in the main dwelling house. Jefcoat and his children moved into the house and occupied all of it except the one room reserved by the widow.

In 1946 Mrs. Powell had a written agreement prepared which she submitted to her stepchildren for their signature and whereby they would have agreed that she had the right to occupy the property and to collect all of the rents, income and profits therefrom until January 1, 1950 whether she remains unmarried or not, but the heirs declined to execute this proposed agreement.

Thereafter on July 19, 1949, Mrs. Sarah Powell was married to Floyd D. Jefcoat at Winona, Mississippi, some seventy miles away, and she and Jefcoat returned to the homestead and continued to live therein. The marriage license was bought in Winona and Mr. Jefcoat obtained the services of a justice of the peace to perform the ceremony, but they did not want to marry at or near the court-

house, in the business section of town, but drove out of town to a spot near the city cemetery where the ceremony was performed in the presence of many witnesses who were unable to tell about it. Both parties told the justice of the peace that it was a secret marriage and requested him not to tell it.

Upon their return to the land in question neither the widow nor Mr. Jefcoat told anyone of the marriage. She continued to be known in the community by the name of Mrs. Sarah Powell. For eight years after her remarriage she sent Christmas cards to one of the heirs and signed all of them Sarah Powell. She continued to sign homestead exemption applications by her former name of Mrs. Sarah Powell, in which applications she was described as a widow. She continued to carry her bank account at all times and to issue checks thereon in the name of Mrs. Sarah Powell. At the trial neither she nor Mr. Jefcoat was able to name a single individual in the community where they lived to whom they had told that they were married and it was the general reputation in the community where she lived that she was still a widow. All mail that she received was addressed to her as Mrs. Sarah Powell and none of the heirs learned of her second marriage until the latter part of 1957. On January 2, 1958 this suit was filed for a partition of the land.

Section 478 of the Recompiled Code of 1942 provides in part as follows: ''Where a decedent leaves a widow to whom, with others, his exempt property, real and personal, descends, the same shall not be subject to partition or sale for partition *during her widowhood,* as long as it is occupied or used by the widow, unless she consent.'' (Emphasis supplied.)

Upon the trial of the case the Chancellor held that under the evidence the land could not be partited in kind and that a sale thereof, and a division of the proceeds, would best promote the interest of the several owners and he also awarded a judgment against Mrs. Jefcoat for rent

on the land for the past eight years, holding that she fraudulently concealed her second marriage.

From this judgment Mr. and Mrs. Jefcoat appeal without supersedeas and it is strenuously contended by counsel for appellants that Mrs. Sarah Powell continued to be a widow after her second marriage. It will be noted from the above-mentioned Sec. 478 that the land is not subject to partition or sale for partition "during her widowhood." In the case of LaBlanc v. Busby, 223 Miss. 415, 419, 78 So. 2d 456, this Court said: "During that time Mrs. Molly Palmer was in possession of the property as the surviving widow of the deceased, with the right to continue and occupy the property during her lifetime, *provided she remained a widow*. Sec. 1412, Code of 1930, Sec. 478, Code of 1942." (Emphasis supplied.)

In the case of Medford v. Mathis, 176 Miss. 188, 193, 168 So. 607, this Court said: "We are of the opinion that the estate or right or interest vested by the quoted statute in the widow is more nearly analogous to a life estate than to any other to which it may be likened. She has the right to occupy and use the homestead during her life, *provided she remain a widow,* and she has, of course, the right to remain a widow." (Emphasis supplied.)

In the case of Lackey v. Harrington, 162 Miss. 512, 516, 139 So. 313, this Court said: "The widow, having retained the property so far as it affects her rights, has title against the other tenants to occupy the same as a homestead, *so long as she remains a widow* regardless of the source from which the title of the cotenants is derived." (Emphasis supplied.)

In the case of Miers v. Miers, 160 Miss. 746, 751, 133 So. 133, this Court said: "The year's support, however, is of a temporary nature, while the homestead is designed as a permanent protection and support so long as the family exists, and the family, in the eyes of the homestead law, continues to exist *so long as the widow lives and remains a widow,* sections 1412 and 1766, Code 1930; where-

fore we must hold that the year's allowance cannot impinge upon the homestead," and on page 752 of 160 Miss. the opinion further says: "Being entitled to the use and occupancy of the homestead, she is in consequence entitled to the rents thereof, and will so continue during her life or widowhood, unless she shall in the future otherwise elect and consent." (Emphasis supplied.)

In the case of Dickerson v. Leslie, 94 Miss. 627, 633, 47 So. 659, this Court said: "She is entitled to continue to use and occupy the homestead, *So long as she remains a widow,* her rights are absolute." (Emphasis supplied.)

In the case of Middleton v. Claughton, 77 Miss. 131, 135, 24 So. 963, this Court said: "The estate in common may be partitioned without the consent of the widow in two events; *first, if she remarry,* and, second, if during her widowhood she shall cease to occupy or use the descended estate." (Emphasis supplied.)

In the case of Birmingham v. Birmingham, 53 Miss. 610, 613, this Court said: "We are of the opinion that the widow, in this case, under the third section of the Act of 1865 took a life estate in the entire tract of 160 acres, *subject, however, to be defeated by her marriage."* (Emphasis supplied.)

In the case of Carpenter v. Brownlee, 38 Miss. 200, 204, this Court in construing a similarly worded statute said: "This proceeds manifestly upon a very different principle from that which governs this case; which is, that the statute positively limits the duration of the estate to widowhood, and that that has been determined by her marriage."

The appellant also argues that she is not liable for the payment of any rent. In the case of Medford v. Frazier, 58 Miss. 243, the Court said: "None of the grounds of demurrer are well-taken. The only one which demands special notice raises the question of whether it is admissible in a bill for partition to pray for an account for rents against such of the cotenants as have been in

possession of the common property. This question, though of first impression here, is well-settled in the affirmative. Freeman on Cotenancy, Sec. 512 and cases cited.''

In Walker v. Williams, 84 Miss. 392, 398-399, 36 So. 388, this Court said: ''It was proper to charge the interest of appellant in the property sold for partition with a reasonable sum for the use and occupation thereof. It is a well-settled equitable principle that each co-tenant has a lien upon the interest of every other for the value of the use and occupation of the joint estate beyond such tenant's individual interest therein, and also any sum which may have been collected and appropriated by such tenant as revenues arising therefrom. This is expressly held in Medford v. Frazier, 58 Miss. 241, and is reaffirmed as the correct doctrine to which full scope and effect is to be given in all proper cases in Burns v. Dreyfus, supra, where the court, through Cooper, J., says: 'We recognize to its full extent the equitable principle that in the partition of lands held in common the court will, in the division of the property—or of its proceeds, if indivisible, and therefore sold for partition—do full justice between the co-tenants by directing accounts to be taken of receipts and disbursements by them, and will so apportion the fund as to do complete equity.' The fact that the husband of appellant also occupied the premises, and that he, under the law, is the recognized head of the family, in no wise limits appellant's liability to render compensation to her other co-tenants for her use and occupation of the joint estate.''

■■ ■ The appellants also complain that the lower court should have ordered a division in kind of the property instead of ordering a sale thereof. The argument of appellants proceeds on the theory that by ordering a division in kind the will could and should be disregarded and one-eighth of the 160 acres set apart to the appellants so as to give her twenty acres in one parcel. The

appellant completely overlook two important things in connection with her contention. The first thing is that the will still stands. As to this see the case of Davis v. Miller, 202 Miss. 880, 888, 32 So. 2d 871, in which we said: "In Laughlin v. O'Reily, 92 Miss. 121, 45 So. 193, it was held that upon renouncing the will the wife took one-half the willed property as an heir at law and the devisees took the other half under the will, thereby making the parties tenants in common. In our latest case, Edwards v. Edwards, 193 Miss. 889, 11 So. (2d) 450, we held that renouncement did not affect the validity of the will; that the will stands, but that the renouncer becomes as to his or her part an heir and the devisees as to their part remain beneficiaries under the will."

 The second thing which the appellants overlook is that subsequent to the death of John W. Powell, two of his children who were devisees in the will, died leaving children of their own and their share under the will descended to these children and some of them are entitled to a very small fraction of the twenty acres which they received and also the one-eighth interest of Mrs. Jefcoat in the entire 160 acres could not be set apart to her in a solid block because of the fact that the entire 160 acres is divided into smaller parcels which are spread over the entire 160 acres and what Mrs. Jefcoat would be entitled to is one-eighth of each of these several small parcels. Also fifteen acres of the land devised to Gwin Powell lie in the forty acres which were sold to satisfy debts, and he is entitled to a share in the 160 acres to make up for his fifteen acres which were sold. Moreover, the proof in this case is overwhelming that a sale of the land and a division of the proceeds would best promote the interest of all the parties.

From what we have said, the decree of the lower court should be affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Holmes,* and *Ethridge, JJ.,* concur.