BOWLING, Justice, for the Court:
A recitation of the facts and issues in this case as shown by the record would make a good novel. The name of the plot should be “Land Is Thicker than Blood.” The case comes to this Court from the Chancery Court of Perry County. It involves several issues; mainly, an alleged fraudulently secured deed, a request for a bill of review, and the homestead status as to one tenant-in-eommon owner of the property. Appellant and appellee are son and mother.
On March 23, 1979, appellee filed her sworn Bill of Complaint in the Chancery Court of Perry County against appellant with the sole contention being that on October 4, 1975, appellant fraudulently induced appellee to relocate her residence to the home of appellant in Wilmer, Alabama. Appellee was 84 years of age at the time. She alleged that appellant carried her to the office of an attorney in Pascagoula, Mississippi, and secured appellee’s signature on a quit claim deed for appellee’s one-seventh interest in the land in Perry County. The other % interest was owned by the children of appellee and her deceased husband, Homer Breland, who died on December 5, 1970.
Appellant immediately employed attorney George M. Simmerman of Pascagoula, who had represented him on prior occasions. Attorney Simmerman filed an answer to the Bill of Complaint on April 16, 1979, in which all fraudulent and undue influence alleged by appellee in her Bill of Complaint was denied under oath. He affirmatively alleged he had paid all taxes on the property in question subsequent to his father’s death and had contributed substantially to the maintenance and upkeep of the property-
It developed that attorney Simmerman was ill with terminal cancer and at the April term of court made this known to the chancellor and to appellant. Due to his illness, the case was continued until the July 1979 term. When that time arrived, it was clear that Mr. Simmerman’s situation had deteriorated, and he had been confined for various periods of time in a hospital in Mobile, Alabama, undergoing specialized treatment. He informed the chancellor that he should be able to try the case in August. The chancellor then entered an order on July 31, 1979, setting the case for vacation hearing on August 28, 1979, with directions that if Mr. Simmerman was not able to try the cause, someone else should appear in his place.
*840 On the morning of August 28, 1979, ap-pellee appeared in court with her attorney. Neither appellant, his attorney Mr. Simmer-man, nor any other attorney appeared. Hereinafter we shall discuss the alleged reasons for this as set out in appellant’s Petition for a Bill of Review. The lower court directed that the cause proceed. On that same date, appellee filed an instrument merely styled “Motion,” which moved the court to set aside and hold for naught the purported deed in question for the reason that at the time of the execution of the deed, the land recited in the deed and the dwelling constituted the homestead of the complainant and her husband, Lewis L. Bryant; that she and the said Lewis L. Bryant were residing together in the dwelling situated on the land described in said deed, and the said Lewis L. Bryant, her husband, never joined in the execution of the deed as required by Section 89-1-31, Mississippi Code 1972 Annotated, and therefore, the purported deed was absolutely void. On the same date an “Order Sustaining Motion,” was executed by the chancellor stating that “the court having considered said motion, the evidence and testimony introduced thereon finds that said motion should be and it is sustained.” Testimony appears in the record taken at the same date from appellee and her husband Lewis L. Bryant. Their original marriage certificate was introduced into evidence showing that appellee and Bryant were married in Stone County, Mississippi, on July 21, 1972.
Evidence was introduced from appellee, whose sole testimony went, to the fact of her marriage to Bryant; that she and Bryant were living together at the “Old Place” in Perry County on the date the deed was executed by her to appellant. When asked whether or not Bryant joined in the deed, she gave no verbal response. It should be pointed out here that she gave no testimony whatever that in any manner touched on the sworn allegations of her Bill of Complaint, but on the other hand contradicted the allegations therein that she had moved to appellant’s home in Alabama and stated under oath that at the time the deed was executed she was living with Bryant at the “Old Place.”
Lewis L. Bryant then testified. He stated that he did not join in the execution of the quit claim deed on October 4,1975; that he was living with appellee on her place at the time as her husband. He further testified that it was his understanding that appellant was to take care of appellee for the rest of her life. As was shown by appellee’s testimony, Bryant gave absolutely no testimony or evidence regarding the Bill of Complaint they came to court to litigate. After receiving the above discussed “Motion” and entering the order thereon, the court executed a Final Decree on the same day [August 28, 1979] setting aside the deed executed by appellee to appellant on October 4, 1975, and ordered that the decree be recorded in the proper records in the Office of the Chancery Clerk. The only indication in the Final Decree as to the basis of the decree was the preamble which stated, “This Cause coming on to be heard on Bill of Complaint, Answer and oral and documentary evidence-; and having heard all of the same and now being fully advised in the premises, the court is of the opinion and so finds that the complainant is entitled to the relief prayed for in her bill.”
As stated above, there was no evidence or testimony whatever introduced before the court regarding the allegations of the Bill of Complaint or the sworn Answer denying its allegations. The decree does not reiterate the finding on the above discussed “Motion.” The order did recite that “her homestead rights in said property be restored unto her for all purposes.”
On April 17, 1980, appellant filed an instrument styled “Bill of Complaint in the Nature of a Bill of Review to Set Aside Decree.” This bill of complaint reviewed the history of the cause and particularly the medical situation of Attorney Simmerman, who died in September 1979, shortly after the Final Decree was entered as described above. He had been confined to a hospital for some time prior thereto. Appellant further alleged that he knew nothing about the hearing but on the other hand had been advised by Mr. Simmerman he would keep *841 him posted and advise him when to be in court. He was not aware that his solicitor had become ill to the extent of impending death. The prayer of the Bill of Complaint requested that it be considered a Bill of Review asking that the said final decree be set aside because of “mutual mistake, surprise or unintentional fraud,” and prayed for general relief.
Appellee filed a general demurrer to the Bill of Complaint and also an answer denying its allegations. The demurrer was overruled.
The cause came on for hearing on August 4, 1980. Appellant testified that he still lived in Wilmer, Alabama, but was born and raised in Perry County, Mississippi. He testified regarding the history of dealing with attorney Simmerman and particularly what he now knew about the situation in 1979, most of which he did not know until later. He stated that he learned about the August 18, 1979, Final Decree for the first time when he went to Perry County to pay taxes on the place in January, 1980. He then began an immediate investigation in order to locate the file previously held by Mr. Simmerman. Along about the time of the decree, Hurricane Frederick had blown ailing Mr. Simmerman’s office away. His widow advised appellant that the recovered files had been divided among seven lawyers. Appellant finally found his file in another lawyer’s office in Pascagoula and immediately employed an attorney to pursue whatever rights he might have. This resulted in filing the Bill of Complaint in the nature of a Bill of Review. No evidence or testimony was introduced by either party regarding the controversy set out in the original Bill of Complaint and Answer. On August 7, 1980, the chancellor entered his decree, “dismissing the Bill of Complaint in the nature of a Bill of Review to Set Aside Decree.” No written or transcribed opinion appears in the record and no reason appears in the decree for denying the relief requested.
Appellant in this appeal propounds two assignments of error:
I. The chancellor erred in not vacating the decree and not resolving the reasonable doubt in favor of appellant and in not granting a hearing on the merits.
II. The chancellor erred in not exercising the intrinsic equity power of the chancery court to set aside the final decree obtained by mistake or unintentional fraud when justice and right so demand.
We are of the opinion that the lower court was in error in failing to grant appellant’s Bill of Review. In Griffith, Mississippi Chancery Practice § 635 (2d ed. 1950), at pages 694, 695, we find the following:
Bill of Review for error apparent. Second. A final decree may be corrected or vacated by a bill of review, but such a bill shall be filed within two years after the date of the final decree in the cause and not after, saving to persons under disability of infancy or unsoundness of mind the like period of two years after the removal of their- disability. A bill of review is one filed to procure an examination and reversal of a final decree, after final adjournment for some material error of law apparent on the face of the decree and the pleadings and proceedings on which it is based, exclusive of the evidence; or upon some material newly discovered matter which was not, and could not, be found and produced by the use of reasonable diligence before the decree in question was entered, or in time for use on a motion for a rehearing. A bill of review for error apparent on the face of the record is in the nature of a writ of error because its object is to have the decree examined and reversed and although it has reference to the former cause, it is not regarded as a continuance of that case, but is in the nature of an original bill, and it is filed and docketed as an independent cause.
We heretofore have seen that at the time of the hearing, on what was supposed to be the original “Bill of Complaint”, there was absolutely no testimony offered regarding any material allegations of the bill. With this situation appellee filed the discussed “Motion,” which obviously was a completely new cause of action. There was not even a request to amend the original bill. Al *842 though the final decree is not clear, it appears to have been based on the motion filed that date and the October 4, 1975, deed set aside because of the failure of Bryant, appellee’s husband, to join in its execution. Even if appellant and a dozen lawyers had been present on the morning of August 28, 1979, appellant would have been entitled to meet this new cause of action in the form of a motion and time to prepare. We therefore hold the decree entered on that date and under the testimony in this record is completely void as it has nothing whatever to do with the original bill of complaint and answer.
We now reach the question as to whether or not the obvious reason for the Final Decree of August 28, 1979, (the failure of Bryant to execute the deed) rendered the Decree valid. Reviewing briefly, appel-lee’s husband died on December 5, 1970. Obviously, he died intestate, leaving appel-lee and six children, with each inheriting a one-seventh undivided interest in the property theretofore a homestead of Mr. Bre-land and appellee. Appellee was entitled to and obviously took advantage of the provisions of Section 91-1-23, Mississippi Code 1972 Annotated, which was in effect at that time and allowed the widow [appellee] to occupy and use the property during her widowhood. As heretofore discussed, appel-lee married on July 21, 1972. This action ended her right under Section 91-1-23 and subjected the entire property to be partited by any and all of the other joint owners. This Court has made this decision without reservation in Jefcoat v. Powell, 235 Miss. 291, 108 So.2d 868 (1959), and Medford v. Mathis, 176 Miss. 188, 168 So. 607 (1936).
The question then arises as to whether or not the widow in remaining in the “old” homestead and bringing in her new husband prohibited a transfer of her undivided interest without the signature of her husband pursuant to the provisions of Section 89-1-31 that was in effect at the time of the case now before us [Section 89-1-31 has now been repealed and its provisions joined with Section 89-1-29], This section provides that:
A conveyance, mortgage, deed of trust or other encumbrance of a homestead, where it is the property of the wife, shall not be valid or binding unless signed and acknowledged by the owner and husband, if he be living with his wife....
In addition to a hearing on the original bill of complaint and answer thereto, appellant is entitled to a hearing on the above discussed “Motion” and order thereon. We have heretofore seen that appellee in the hearing that was had indicated that appellant had taken her to Alabama to live with him and care for her and that during this time they went to Pascagoula for appellee to execute the deed. This appears to be contradictory to Bryant’s testimony that the two were living together in Perry County at the time. These facts and any others material are matters to be presented to the chancellor in another hearing. We, therefore, find it necessary to reverse and remand the cause on the grounds that the chancellor should have sustained the bill of complaint in the nature of a bill of review and also to have a hearing on the “Motion” regarding the absence of Bryant’s signature on the deed. We are sure that the attorneys and the chancellor shall see that the pleadings are properly rearranged for these purposes.
In order to facilitate a hearing on the questions involved, we refer the lower court and the attorneys to the following authorities and suggest their consideration, as well as others on the subject, to-wit: Jones v. Lamensdorf, 175 Miss. 565, 167 So. 624 (1936); Clark v. Edwards, 180 Miss. 97, 177 So. 361 (1937); authorities under Homestead Key Number 84 of the Mississippi Digest and any other authorities that the attorneys in their necessary research are able to produce.
REVERSED AND REMANDED.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.